UNITED STATES DISTRICT COURT                    FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
—————————————————————————

STANLEY STEPHENS,

                    Plaintiff,

        – against –                              **MEMORANDUM & ORDER**

ANDREW C. BRUNSDEN, KATERINA V.                  17-CV-1153 (ERK)
KURTEVA, PETER RELYEA, LESLEY A.
BROVNER, MICHAEL CARROLL, SUSAN T.
LAMBIASE, MARK G. PETERS, MICHEL P.
SPANAKOS, SARA A. WALSHE, THE CITY OF
NEW YORK, and SHELLEY R. SOLOMON,

                    Defendants.

—————————————————————————


—————————————————————————

ORVILLE MORGAN,

                    Plaintiff,

        – against –                              17-CV-3079 (ERK)

THE CITY OF NEW YORK, ANDREW C.
BRUNSDEN, KATERINA V. KURTEVA, PETER
RELYEA, LESLEY A. BROVNER, MICHAEL
CARROLL, SUSAN T. LAMBIASE, MARK G.
PETERS, MICHEL P. SPANAKOS, SARA A.
WALSHE, and SHELLEY R. SOLOMON,

                    Defendants.

—————————————————————————

KORMAN, *J.*:

One night in Brooklyn in 2015, three sixteen-year-olds left the group home where they lived as part of a program for troubled youth. They made their way to Manhattan, where they robbed, beat, and raped a woman. In response, the City launched a ten-month investigation into whether contractors like the operator of the group home, a non-profit called Boys Town, were properly supervising children the City had placed in their care.

Plaintiffs, Stanley Stephens and Orville Morgan, were overnight staffers at Boys Town who worked in a different facility and had nothing to do with the escape. According to their complaints, they were blameless Boys Town staffers dedicated to helping at-risk youth. But, they claim, heads had to roll. So the City allegedly trumped up the accusation that Stephens and Morgan were lying about properly supervising children. The City arrested them, derailed their careers, and got the good press it wanted for the crackdown—allegedly knowing all along that the charges would be dismissed.

Stephens and Morgan sued the City and the officials they believed were responsible, claiming false arrest under the Fourth Amendment and New York law. Stephens also alleged defamation. The defendants now move to dismiss the complaints or, alternatively, ask me to consider a motion for summary judgment. The primary question is what I should do with the defendants' evidence: security footage that—at least on its face—suggests Stephens and Morgan sometimes really were failing to check on children.

## BACKGROUND

Except where context indicates, what follows is the story alleged in the complaints. Stephens and Morgan are young men who have devoted much of their lives to helping children, particularly at-risk youth. Stephens Compl. ¶ 2.[1] At the time of the rape, in June 2015, both worked for Boys

---

[1] Because the complaints are close to identical, I cite only Stephens's unless otherwise indicated. The reader should assume similar citations to Morgan's complaint.

Town as "overnight program staff," meaning that their primary job was to monitor boys through the night.[2] *Id.* ¶¶ 55–56. But they did not work in the particular facility the boys escaped from. *Id.* ¶ 54. Indeed, they had nothing to do with the escape. *Id.* ¶ 8. Rather, they did their job well. *Id.* ¶ 57. No one ever escaped while either was on duty, and they made a difference in many lives. *Id.* ¶¶ 57–58.

Stephens and Morgan were required to keep records during their overnight shifts. One of these was a log book in which every half-hour they recorded the status of the boys they were supervising. *Id.* ¶ 59. For example, in the log book for May 17, 2015, Stephens wrote "youth in rooms, asleep" as the 2:00 AM entry. *Id.* ¶¶ 70, 72. Then for every half-hour through 7:30 AM, Stephens wrote "status remains."



*Id.* ¶ 72. In addition to the log books, which were intended to record the status of the boys, Stephens and Morgan also had to fill out "bed-check" sheets, which recorded their own activities in checking on the boys. *Id.* ¶¶ 66–67.

---

[2] At one point the complaints say that Stephens and Morgan did not begin work until January 2016, but this appears to be a typo. *Id.* ¶ 55.

Meanwhile, the City was conducting the investigation prompted by the rape. Among the relevant City employees at the Department of Investigation ("DOI") were defendants Andrew Brunsden, Katerina Kurteva, Peter Relyea, and Shelley Solomon. *Id.* ¶ 48. They were supervised at the DOI by defendants Lesley Brovner, Michael Carroll, and Susan Lambiase, and by defendant Mark Peters, the DOI commissioner. *Id.* ¶¶ 42, 47.

Early in the investigation, the DOI learned that overnight program staff had not been properly monitoring the boys who had escaped. *Id.* ¶ 89. Indeed, one of those staff members—who, again, was neither Stephens nor Morgan—had written in a log book that the boys had been asleep during the escape. *Id.* ¶ 90. The DOI arrested that staffer and charged him with two records crimes. *Id.* ¶ 91.

After this arrest, the DOI expanded its investigation into other Boys Town locations and other service providers. *Id.* ¶ 93. The investigation lasted ten months and came to involve two prosecutors, defendants Sara Walshe and Michael Spanakos. *Id.* ¶¶ 50, 93. Despite the earlier arrest of the other staffer, the defendants were under intense pressure, and, ultimately, they decided they needed to send a message to quell a public outcry. *Id.* ¶¶ 10–11. They "coveted the appearance of toughness." *Id.* ¶ 15. So they decided to arrest four other people who had worked on the program: Stephens, Morgan, and two others. *Id.* ¶ 13. Defendant Peters, the DOI commissioner, personally encouraged this. *Id.* ¶ 128. The defendants knew, however, that there was no probable cause to arrest Stephens or Morgan. *Id.* ¶ 17. They knew there would be no prosecutions. *Id.* ¶ 15.

Nonetheless, in April 2016, one of the DOI investigators, defendant Kurteva, executed New York state criminal complaints against Stephens and Morgan. Mot. to Dismiss, Exs. C, D. The complaints charged falsification of business records and "offering a false instrument for filing" (which essentially prohibits offering falsified records to the public with bad intent). *See* N.Y. Penal Law §§ 175.05, 175.30. The complaints were based on four nights in May and June 2015, three for Stephens and one for Morgan, when their log-book entries indicated that the boys were asleep in bed. Kurteva swore that she had reviewed surveillance footage from those nights, and, "[a]t no time during [the

relevant] periods, did [she] see the [relevant staff member] enter or approach the threshold of the doors to the rooms where the youths were supposed to be sleeping." The implication was that Stephens and Morgan had not really been monitoring the boys, and thus had been forging the log books that showed what the boys were doing.

The next day, Stephens and Morgan were handcuffed, arrested, and kept in jail for hours. Compl. ¶¶ 106–07. That same day, the DOI issued a two-and-a-half-page press release under the headline "DOI arrests three additional staffers at city's juvenile homes amid investigation of inadequate oversight by the city administration for children's services." *Id.* ¶¶ 109–10; Mot. to Dismiss, Ex. F ("PR"). The press release fleshed out the criminal complaints:

> Three staffers were arrested on charges of falsifying log book entries claiming they conducted required bed checks to ensure youth were secure in their bedrooms when they had not actually monitored the youths' whereabouts. … In some instances, these employees were captured on surveillance video lying on floors of the facility or even leaving the facility unsupervised for periods of time when they should have been present and conducting bed checks.
>
> ***
>
> On a variety of occasions, according to DOI's investigation and the criminal complaints, each of the employees made entries in their log books stating in part, "youth in rooms" and "all is well" and initialed each entry. Video footage from cameras inside the facility, however, showed that during these periods the employees were, at times, lying on floors with pillows and sheets or remained in unoccupied bedrooms without approaching any of the youth bedrooms or making any bed checks. In the 25 days leading up to the June 2015 [escape], employees made just 15% of the required bed checks reviewed by DOI, according to the investigation. While this number improved in the immediate days after the escape, of all 37 nights reviewed by DOI before and after the incident, the required bed checks were performed only 27% of the time.

PR 1, 2. The press release mentioned Stephens by name, but it did not name Morgan (who has not joined Stephens's claim for defamation). *Id.* at 2. It concluded with a disclaimer: "Criminal complaints are accusations. Defendants are presumed innocent until proven guilty." *Id.* at 3.

The press release also mentioned a 23-page report issued by the DOI.[3] *Id.* at 1. The report generally discussed the investigation, finding a chain of supervision problems: "overnight staff failed to monitor youth and falsified log books," "Boys Town managers failed to adequately supervise overnight staff," and the City failed to supervise Boys Town. Report at 5, 9, 13. Included in this discussion is a paragraph with the heading "Boys Town overnight staffer Stanley Stephens failed to conduct the required checks and falsified log book entries." *Id.* at 7. This paragraph, which begins "DOI found…," is similar to the discussion in the press release. *Id.* at 7–8. The section ends, "Because of their failure to conduct the required checks and falsification of the logbooks the above referenced employees were arrested and are being charged in Kings County with various misdemeanor counts…." *Id.* at 8. The report also discusses accusations against Morgan, but without using his name, which was redacted. *Id.* at 8. Beyond issuing the press release and the report, the DOI took other steps to publicize the arrests, including providing Morgan's identity to The New York Times. Morgan Compl. ¶ 98. Many media outlets picked up the story—not just The Times, but also ABC, CBS, and others. Stephens Compl. ¶¶ 112–13.

The charges against Stephens and Morgan went nowhere—just as the defendants knew would happen. Less than two months after the arrests, the charges were unconditionally adjourned in contemplation of dismissal, and they were finally dismissed later that year. *Id.* ¶ 116. But the plaintiffs were not unscathed. Morgan was fired from a new job working with children, and Stephens lost many jobs. *Id.* ¶ 115. In short, the defendants—who knew Stephens and Morgan had done nothing wrong— arrested the plaintiffs, humiliated them, and interfered with their careers because the DOI needed people to blame.

---

[3] The report is available at https://www1.nyc.gov/assets/doi/press-releases/2016/apr/pr11_boystown_report_41316.pdf (last visited Aug. 23, 2018).

# ANALYSIS

The defendants have moved to dismiss the complaints as facially inadequate. *See* Fed. R. Civ. P. 12(b)(6). Alternatively, they have asked me to convert their motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Discovery has not yet occurred. I proceed along the lines of the defendants' alternatives, first addressing which claims can and cannot survive a motion to dismiss. Then, for those claims that do survive a motion to dismiss, I address whether to entertain a motion for summary judgment at this early stage.

## I. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. [I] must accept as true all of the allegations contained in a complaint, though threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (cleaned up). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Though [I am] confined to the allegations contained within the four corners of the complaint, [I] may also consider any documents attached to the complaint as an exhibit or incorporated in it by reference." *Carlin*, 852 F.3d at 212 (cleaned up).

### A. Probable cause and the surveillance video

Stephens and Morgan's primary allegation is that the defendants participated in arresting them despite knowing that there was no probable cause to do so. If true, the defendants both violated the Fourth Amendment, giving rise to a cause of action under 42 U.S.C. § 1983, and committed the tort of false arrest under New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The defendants primarily respond there *was* probable cause. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under

state law or under § 1983." *Id.* at 852 (cleaned up). This is true even if the arresting officers acted maliciously. *See Whren v. United States*, 517 U.S. 806, 811–13 (1996); *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007). And it refers to probable cause regarding *any* crime, not just the crime for which the plaintiff was nominally arrested. *See Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (per curiam).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. When Stephens and Morgan were arrested (besides being charged with offering false instruments), the DOI alleged that they had falsified business records. "A person is guilty of falsifying business records in the second degree when, with intent to defraud, he … [m]akes or causes a false entry in the business records of an enterprise." N.Y. Penal Law § 175.05(1). Further, as the defendants now discuss in their briefing, a person is also guilty if, with intent to defraud, he "[o]mits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of his position." *Id.* § 175.05(3).

To argue that there was probable cause to believe the plaintiffs were falsifying business records, the defendants rely on surveillance footage, which they submitted with their motion papers, from the four nights on which the arrests were based. Mot. to Dismiss, Ex. E. Those videos show what defendant Kurteva alleged in the criminal complaints: that for significant portions of the relevant nights, the relevant plaintiff did not "enter or approach the threshold of the doors to the rooms where the youths were supposed to be sleeping." Francolla Decl. (Dkt. 28) ¶¶ 4, 13, 23, 38, 40, 54.[4] Yet, despite not having come near the bedrooms, Stephens and Morgan made repeated log-book entries

---

[4] I cite defendant's counsel's sworn summary of the footage, which is available on the docket, rather than the footage itself, which is not. The plaintiffs have not challenged the accuracy of the summary.

like "status remains" or "youth asleep … all is well." Compl. ¶¶ 72, 78, 84. Thus, one inference is that Stephens and Morgan did not know if the boys were really asleep. Common sense suggests at least a fair chance that at some point the boys were awake—people do get up at night. So, although the videos do not prove falsification, they seem to establish at least a "probability or substantial chance" of a crime—that the plaintiffs were trying to defraud Boys Town into thinking they were supervising the boys when they actually were not. *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).[5]

On this motion to dismiss, however, I cannot consider the surveillance footage. At this procedural stage, the general rule is that I am limited to the corners of the complaints. *Carlin*, 852 F.3d at 212. Granted, I may consider documents that the complaints incorporate by reference. *Id.* But the complaints' sole mention of the videos—in paragraph 147 of 154 of the Stephens complaint, on page 22 of 24—comes in a quotation of the DOI report:

> The DOI Report falsely stated that Mr. Stephens and others "falsified the log books by recording purportedly contemporaneous but blatantly false 'observations' of the youths when, in fact, the video showed that employees were not checking on the youths at the required intervals and were not filling out the log books in real time."

The defendants' argument that I may consider the videos at the pleading stage amounts to one paragraph and a footnote:

> As for the surveillance videos, the plaintiffs strategically attempt to avoid any mention of them.[1] Plaintiffs used the criminal court complaints to help draft their Complaints and the criminal court complaints specifically mention the surveillance videos. Plaintiffs' counsel was also involved in the underlying DOI investigation because he was employed by the law firm that represented Boys Town. Plaintiffs' knowledge of the videos should not prevent [sic] inclusion of them on a motion to dismiss, especially when it appears that plaintiffs do not dispute what is depicted on the videos, but contest whether their logbook entries are enough to establish probable cause for the crimes charged.

---

[5] Or, as the defendants now argue, that Stephens and Morgan were fraudulently omitting to make true entries to the effect of "I never checked." *See* N.Y. Penal Law § 175.05(3). Because of the disposition of this opinion, I do not consider whether the plaintiffs were under a duty to make entries like this, and whether the failure to do so constituted a falsification of business records.

[1] Plaintiff Stephens references the video in his Complaint. *See* Exhibit A, ¶ 147 ("*the video* showed that employees were not checking on the youths at the required intervals and were not filling out the log books in real time.") (emphasis added).

Defs.' Mem. 6–7 (citations omitted). This argument is hardly compelling. The defendants cite nothing for their theory that the complaints incorporate the videos because they (arguably) incorporate criminal complaints that mention the videos. And that incorporation-by-incorporation argument has been rejected in a thorough analysis by another court in this circuit. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 717–20 (S.D.N.Y. 2015). Alternatively, the defendants' footnote appears to argue that a single, oblique reference to the videos—within a quotation from the report—is enough for incorporation. That is not the law either. A single mention does not constitute incorporation by reference. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), *as limited by Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991).[6]

To sum up, the primary defense is that "[t]he logbooks and videos speak for themselves." Defs'. Mem. 8. Procedurally, however, the videos cannot yet speak. I thus cannot grant the motion to dismiss on this ground.

### B. *High-level defendants*

The defendants next argue that the false-arrest claims at least fail as to (natural) defendants other than Kurteva and Relyea. Kurteva and Relya participated in the arrest, and Kurteva also swore out the criminal complaints. Defs.' Mem. 16–17; Compl. ¶¶ 104–08, 126. But, it is argued, the allegations against the other officials are threadbare—insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. This is a close question.

---

[6] Indeed, I am unaware of the Second Circuit ever having deemed a video incorporated into a complaint by reference unless the plaintiffs conceded that it was. *See Garcia v. Does*, 779 F.3d 84, 87 & n.2 (2d Cir. 2015).

Because *respondeat superior* does not apply in § 1983 actions,[7] *see id.* at 676, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity," *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004)). "[N]aked assertions devoid of further factual enhancement" will not do. *Iqbal*, 556 U.S. at 678 (cleaned up). Here, the extent of the allegations specifically naming the other defendants is basically that "Defendants Brovner, Brunsden, Carroll, Lambiase, Solomon, Spanakos, and Walshe, through their words and actions, directed, requested, invited and/or encouraged the false arrest of Mr. Stephens." Compl. ¶¶ 47, 103, 125. "Defendant Peters, as the Commissioner and final policymaker for DOI, an agency of the City of New York, personally approved, directed, requested, invited, and/or encouraged the false arrest." *Id.* ¶¶ 47, 128. Otherwise, these defendants are included in the scheme collectively without any pleading of individual conduct. These assertions are not "naked," but they are not wearing much.

Nonetheless, drawing on my "judicial experience and common sense" in this "context-specific task," I believe the complaint crosses the line separating possible from plausible misconduct. *Iqbal*, 556 U.S. at 679. Even if I set aside that the allegations against the higher-level defendants appear to be factual allegations rather than "legal conclusion[s] couched as … factual allegation[s]," *id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the following is undisputedly well pleaded: that there was intense pressure on the DOI, Compl. ¶ 10; that the plaintiffs were arrested after a ten-month investigation despite doing their jobs well, *id.* ¶¶ 51, 57; that the charges were unconditionally adjourned in contemplation of dismissal, *id.* ¶ 25; and that two DOI employees agreed

---

[7] Or (to be complete) against supervisors under New York law. *See Yaniv v. Taub*, 256 A.D.2d 273, 274 (1st Dep't 1998) (memorandum); *Connell v. Hayden*, 83 A.D.2d 30, 50–51, 58 (2d Dep't 1981).

to a scheme of false arrest, *id.* ¶¶ 95–108. As the press release—which *is* incorporated into the complaints—makes clear, the other defendants were involved in this somehow:

- "DOI's Office of the Inspector General for City-funded Not-for-Profits and DOI's Office of the Inspector General for ACS conducted th[e] investigation, specifically Investigative Attorney Katerina Kurteva and Investigator Peter Relyea, under the supervision of Inspectors General Andrew Brunsden and Shelley Solomon, Associate Commissioner Susan Lambiase, Deputy Commissioner/Chief of Investigations Michael Carroll, and First Deputy Commissioner Lesley Brovner."

- "DOI Commissioner Peters thanked Kings County District Attorney Kenneth Thompson and his staff, specifically Assistant District Attorney Michael Spanokas, Chief of the Rackets Bureau, and Assistant District Attorney Sara Walshe, of the Rackets Bureau, for their partnership on this investigation…."

PR 3. The release also quotes Peters. *Id.* at 2. Given a scheme including at least Kurteva and Relyea, the other defendants' supervision of or partnership with the schemers, and the circumstances the plaintiffs describe, it is plausible that the other defendants participated in the misconduct. Plaintiffs' allegations are scant, but they have pleaded enough, and it is not clear how much more they could have pleaded, since further information about the other defendants' roles remains with the defendants.

## C. *Defamation*

Stephens has also alleged defamation. Compl. ¶¶ 137–54. He bases his claim on nine statements in the press release and report, which he says were jointly created and approved by

defendants Brunsden, Brovner, Carroll, Lambiase, Peters, and Solomon.[8] These statements, with one outlier, fall into two related categories: statements about what the DOI did and statements about what Stephens did. I list my pleading-stage conclusion next to each:

| No. | Statement | Source | Conclusion |
|---|---|---|---|
| 1 | Three staffers were arrested on charges of falsifying log book entries claiming they conducted required bed checks to ensure youth were secure in their bedrooms when they had not actually monitored the youths' whereabouts. | PR 1 | Substantially true |
| 2 | STANLEY STEPHENS [and others] are each charged in separate incidents with falsifying log book entries that inaccurately indicated they checked the whereabouts of the juveniles in the care of Boys Town. | PR 2 | Substantially true |
| 3 | DOI further found that these employees falsified log books by making entries that purported to show they checked on the youth when, in fact, they failed to do so. | Report 2 | Substantially true |
| 4 | DOI found that overnight employees … falsified the log books by recording purportedly contemporaneous but blatantly false "observations" of the youths when, in fact, the video showed that employees were not checking on the youths at the required intervals and were not filling out the log books in real time. | Report 5–6 | Substantially true |
| 5 | DOI found that Stanley Stephens … falsified the log book … | Report 7 | Substantially true |
| 6 | Boys Town Overnight Staff … Falsified Log Books | Report 5 | Substantially true |

---

[8] The complaints also mention that "[t]he DOI Press Release falsely implied a connection between" the rape and the plaintiffs' arrest, Compl. ¶ 111, but Stephens did not discuss this theory further in his complaint or briefing, *see id.* ¶¶ 137–54; Response 19–21.

| 7 | Stanley Stephens … Falsified Log Book Entries | Report 7 | False |
| 8 | Because of their … falsification of the logbooks the above referenced employees were arrested … | Report 8 | False |
| 9 | Stephens recorded in the log book that he had checked the whereabouts of the teens every half hour during that time period … | Report 7 | Not defamatory |

I dispose quickly of this last statement, which neither side's briefing has discussed. This may be a minor misstatement because, according to the pleadings, the log books reflected the boys' status, not explicitly whether Stephens had checked on them. But to say that Stephens *did* check on the boys is plainly not defamatory. Defamatory statements "tend[] to expose a person to public contempt, hatred, ridicule, aversion or disgrace," or at least "cause[] harm." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 244–45 (2d Cir. 2017) (quoting New York law). This statement does not do that.

Otherwise, although there are several elements to a defamation claim, *see id.* at 244–45, the only one the defendants have challenged is falsity.[9] In one form or another, "[f]alsity is an element of defamation under contemporary New York law." *Id.* at 244. Therefore, with respect to true statements, Stephens cannot proceed.

---

[9] The defendants allude to the "public interest qualified privilege," *see Zeevi v. Union Bank of Switzerland*, 1993 WL 148871, at *6–8 (S.D.N.Y. Apr. 30, 1993), but they do not discuss it, Defs.' Mem. 2, so I do not consider it.

The defendants argue that the statements merely reflect what happened: that the investigation *did* find wrongdoing, that Stephens *was* arrested. This is both right and wrong. To start, this argument simply does not apply to statements six through eight. Those say simply that "staff falsified log books," "Stephens falsified log book entries," and "because of their falsification." These are not statements that an investigation or an arrest happened; they are statements that falsification happened. Yet, according to the pleadings here, there was no falsification by Stephens and Morgan. Thus, with respect to statements seven and eight, which specifically include Stephens, the defamation claim may proceed. (Statement six refers to falsification by the staff generally, not Stephens, and that is not alleged to be false.)

Otherwise, the defendants are substantially correct. Statements one and two reflect that Stephens was arrested on charges of falsification. Statements three through five reflect that the DOI found falsification. Both are true. As such, with respect to these five statements, the defamation claim is dismissed. *See Savino v. City of New York*, 168 F. Supp. 2d 172, 179 (S.D.N.Y. 2001) (DOI press release announcing fact of arrest was not defamatory), *rev'd on other grounds*, 331 F.3d 63 (2d Cir. 2003). Indeed, Stephens concedes this:

> We are in full agreement that merely reporting the fact of an arrest would not be actionable as a defamation claim, even if the arrest were later proven to be invalid. Nor would reporting on the allegations made in connection with a criminal case be defamatory, even if those allegations were later proven to be false.

Response 19–20.

Stephens's complaint (although not his briefing) makes the additional argument that statements one through five are still false because they do not characterize the log books accurately. *See* Compl. ¶¶ 139–48. According to the complaints, the bed-check sheets—not the log books— showed what Stephens and Morgan were doing. *Id.* ¶¶ 66–67. The log books showed what the boys were doing. *Id.* ¶ 59. So, according to the complaint, a statement like "Three staffers were arrested on charges of falsifying log book entries *claiming they conducted required bed checks*" is not literally true. *Id.*

¶ 139 (quoting PR 1). The log-book entries claimed that the boys were sleeping, not that the staffers had conducted bed checks. *Id.* ¶ 140. But this is immaterial. The standard is "substantial truth," not literal truth. *See Tannerite Sports*, 864 F.3d at 242–43. Even if the statements had described the log books accurately, they would not have had a different effect on the reader, *see id.*, because the part tending to expose Stephens to public contempt is the description of his arrest for falsifying records, not the nuances of the records he allegedly falsified. Therefore, statements one through five cannot be defamatory. They are substantially true.

Finally, as with the false-arrest counts, the defendants argue that Stephen's complaint is threadbare regarding who took what defamatory action. All Stephens pleads is that "Defendants Brunsden, Brovner, Carroll, Lambiase, Peters, and Solomon … jointly created and approved the DOI Press Release and DOI Report." Compl. ¶ 138. Still, in this case, this is enough at the pleading stage. The press release says that the investigation was conducted "under the supervision of Inspectors General Andrew Brunsden and Shelley Solomon, Associate Commissioner Susan Lambiase, Deputy Commissioner/Chief of Investigations Michael Carroll, and First Deputy Commissioner Lesley Brovner." PR 3. The release also specifically quotes Commissioner Peters. *Id.* at 2. It is plausible to believe that manager-level City employees approved a press release with their names in it.

## II. Summary Judgment

Besides moving to dismiss the complaint, the defendants have also asked, alternatively, that I consider the motion as one for summary judgment. This alternative request is consistent with the Federal Rules of Civil Procedure: "if … matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Then I must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The plaintiffs have the ultimate burden, which means they must have evidence of a false arrest, and, on the defamation claim, means Stephens must prove the falsity of the defamatory statements (which, in turn, basically means proving the log books were accurate). The choice to convert the motion is discretionary. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998) (per curiam); *Stephens v. Bayview Nursing & Rehab. Ctr.*, 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (collecting cases). The defendants say the videos are dispositive. Stephens and Morgan say that I do not have all the facts. Whether to convert this motion is a difficult question. It involves the juxtaposition of a very high standard, for granting summary judgment without discovery, with a very low one, for judgment based on qualified immunity.

### A. *Auxiliary filings at summary judgment*

Initially, I note that neither side has even discussed—let alone filed—the documentation associated with a motion for summary judgment. Under Local Civil Rule 56.1(a), motions for summary judgment require "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." The defendants have not submitted any such statement.

Stephens and Morgan also have not submitted Rule 56 papers. Their best argument is that I must consider "[t]he multitude of facts uncovered through DOI's investigation … in assessing a probable cause defense, yet those facts have not been presented to the Court because no factual record has been developed, other than Defendants' selected video clips." Sur-Reply 5. This argument is not presented in the form required by Rule 56. If a non-movant "cannot present facts essential to justify its opposition" the proper procedure is to raise that issue "by affidavit or declaration." Fed. R. Civ. P. 56(d); *see Kazolias v. IBEWLU 363*, 806 F.3d 45, 54 (2d Cir. 2015). "A reference to … the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is

not an adequate substitute for a Rule [56(d)] affidavit, and the failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (citation omitted). Stephens and Morgan did not submit an affidavit. Indeed, all they stated initially was that "it would be premature and inappropriate to hash" out factual disputes "beyond the face of Plaintiffs' Complaints." Response 11. That is not a productive way oppose a motion that could result in summary judgment.

Because I am technically reviewing a request for conversion, I do not mean to suggest that the parties are violating the summary-judgment rules. (And even if they are, I do not want to hold either side to a standard that the other has not followed.) But I do think the parties' non-discussion of these papers suggests that the parties are viewing the motion primarily under Rule 12 alone. That itself mildly weighs against converting the motion into one for summary judgment.

## B. *Qualified immunity*

Half of why I find this decision difficult is that the videos seem decisive under the relevant standard. As discussed, probable cause is a complete defense to false arrest. Probable cause requires only a "probability or substantial chance" that Stephens and Morgan were falsifying business records. *Gates*, 462 U.S. at 243 n.13. And on the claim that gives me jurisdiction, the bar is actually even lower. For the § 1983 claim (although not the state-law ones) the defendants would have qualified immunity from suit if "it was objectively reasonable for [them] to believe they [had] probable cause." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). For qualified immunity, the question is just whether "a reasonable … officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Zellner*, 494 F.3d at 369 (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001)). Put another way, the defendants needed only "arguable probable cause." *Id.* at 369–370.

Here Stephens and Morgan made log-book entries reflecting that the boys were sleeping, even though there are videos proving that Stephens and Morgan were not looking in on them at the times the entries reflect. On two nights, Stephens spent most of the night continuously in a staff room. Francolla Aff. ¶¶ 11–12, 16, 19. On the other, he left the entire facility for more than an hour. *Id.* ¶¶ 27–28. On the night at issue for Morgan, he appears to have slept through at least two checks. *Id.* ¶¶ 43–47. Viewing this footage in isolation, at least some reasonable officer could believe there was a "substantial chance" that the plaintiffs were falsifying records. *See Guadagni v. N.Y.C. Transit Auth.*, 2009 WL 1910953, at *5 (E.D.N.Y. June 30, 2009), *aff'd*, 387 F. App'x 124 (2d Cir. 2010) (finding probable cause regarding benefits fraud where video-based criminal complaint discussed plaintiff acting seemingly inconsistently with claimed disability); *Hall v. Brown*, 489 F. Supp. 2d 166, 174 (N.D.N.Y. 2007) (finding probable cause regarding records falsification where surveillance showed plaintiff absent from work in manner inconsistent with time sheets).

To be sure, the videos do not *prove* falsification. Stephens and Morgan are correct in saying that the records might have actually been true. Response 13, 16. The boys could have been sleeping, as Stephens and Morgan recorded, whether anyone verified that or not. But this is not a criminal case. The defendants do not have to prove falsification beyond a reasonable doubt. They win on (at least) the false-arrest claims if they prove arguable probable cause. It seems likely that they will.

Indeed, Stephens's complaint itself suggests that Stephens was not watching the boys. Despite arguing that there was no probable cause for purposes of the false-arrest claims, the defamation claim appears to strategically omit any reliance on statements that Stephens was not checking on the boys. *See* Compl. ¶¶ 137–54. For example, Stephens's complaint says that he was defamed by the statement in the report that "Stanley Stephens … falsified log book entries"—ellipsis his. *Id.* at 149 (quoting Report 7). Without the ellipsis, the complete quotation is "Stanley Stephens *failed to conduct the required checks* and falsified log book entries." Report 7 (emphasis added). Yet Stephens does not allege defamation based on the omitted words—that he did not conduct the checks. If he did not conduct

the checks, a reasonable officer could presumably think there was a fair chance he was falsifying records related to the checks.

"[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[I]t is effectively lost if a case is erroneously permitted" to advance in litigation, which is why the Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage." *Id.* at 231–32 (quoting *Mitchell*, 472 U.S. at 526, and *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). Under the circumstances, I am reluctant to allow this case to proceed to discovery.

### C. Totality of the circumstances

Nonetheless, as a general rule, "[t]he nonmoving party *must* have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)) (emphasis added). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.* This is not the rarest of cases, perhaps one in which everything turns on the interpretation of a legal document.

Rather, the question here is about probable cause. Probable cause "depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). I must assess the facts known by the officers at the time of the arrest. *Ackerson*, 702 F.3d at 19. Qualified immunity similarly depends on the facts known to the officers at the time. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam). But here there is almost no evidence of what the defendants knew. They conducted a ten-month investigation, so they probably knew quite a bit. Yet they have not produced documents, answered interrogatories, or been deposed. Theoretically, probable cause that may seem apparent on the basis

of the videos alone could have been undermined by other facts. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571–73 (2d Cir. 1996) (considering whether police "received information that was sufficient to eliminate probable cause"). Specifically, in opposing the motion, Stephens and Morgan claimed that monitoring the boys did not require actually entering the bedroom:

> [The plaintiffs] monitored the youths by positioning themselves in places where they could see and hear the youths' movements. The boys' bedroom doors were always kept open. The boys' bedrooms were on the upper floors of the house where the only means of egress were the bedroom door (which Plaintiffs could see) and windows that were locked and secured by gates, such that "nobody could get out" that way. Another flawed assumption is Defendants' conflation of making "checks or rounds every thirty minutes" with physically entering every bedroom every 30 minutes. That was neither necessary nor required.

Response 11 (citations omitted). Of course, the videos show that the plaintiffs sometimes were not even approaching the bedrooms. One night Stephens left the facility for about an hour. But maybe Morgan was covering for him. Maybe there is other footage showing that the boys really were asleep. If Stephens and Morgan really were properly doing their jobs on the nights in question and the defendants knew it, there would not have been even arguable probable cause, regardless of what the videos showed. Without knowing the extent of the defendants' knowledge, I find it inappropriate— if only barely—to deprive Stephens and Morgan of their day in court. *See Gersbacher*, 134 F. Supp. 3d at 720 n.4 (refusing to convert a motion to dismiss into a motion for summary judgment on the basis of videos because the case was still in the early stages of discovery); *cf. Hall*, 489 F. Supp. 2d at 170 (granting summary judgment where an "extensive history" had "resulted in a well-developed record"). Summary judgment, including on the intertwined state-law claims, is premature.

## CONCLUSION

The allegations in this case are serious. I do not take lightly the idea of City officials misusing their powers. It seems, however, that the plaintiffs' grievance is not the fact of their arrests so much as the DOI arresting them on charges it knew it could not prove. That grievance is not actionable under the legal theories alleged if the DOI had probable cause. Indeed, I suspect that the plaintiffs

may well be doing to the defendants the very thing that the plaintiffs accuse the defendants of doing to them—bringing a legal proceeding even though they very likely will not prevail. As I allow Stephens and Morgan to proceed to discovery, I trust that plaintiffs' counsel has been mindful of his obligation not to encourage the Court to authorize a waste of time. *See* Fed. R. Civ. P. 11(b).

The motion to dismiss is denied with respect to the § 1983 and false-arrest claims, and granted in part and denied in part with respect to the defamation claim. I decline to consider the motion as one for summary judgment. This decision is without prejudice to any request for summary judgment that the defendants make after sufficient discovery.

**SO ORDERED.**

*Edward R. Korman*
Edward R. Korman
United States District Judge

Brooklyn, New York
August 23, 2018